**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Victor CORONA, Defendant–Appellant.**

No. 93–10659.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1994.

Decided Sept. 7, 1994.

---

Lawrence D. Wishart, Reno, NV, for defendant-appellant.

William M. Welch, Asst. U.S. Atty., Reno, NV, for plaintiff-appellee.

Before: NORRIS, THOMPSON and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Victor Corona appeals his conviction and sentence for conspiracy to possess and dis-

tribute cocaine and three substantive counts stemming from this conspiracy. Corona was tried in the District of Nevada, which is where Corona's coconspirators initially agreed to the drug transaction. The actual distribution, which formed the basis for the three substantive counts, took place in California. Among the issues Corona raises is the propriety of venue in Nevada for these substantive crimes. We reverse Corona's convictions on counts two through four for improper venue, but we affirm the conspiracy conviction.

## I

## BACKGROUND

Josiah Specht, a confidential informant, and Scott Jackson, an undercover agent, met with two of Corona's coconspirators, Richard Carrillo and Ernest Benavidez, in Reno, Nevada on November 2, 1991. Benavidez agreed to supply ten kilograms of cocaine. Benavidez was supposed to meet Agent Jackson in Las Vegas on November 14 to conclude the transaction, but at the last minute, he called Jackson and said he could not travel to Las Vegas. The deal was postponed to November 26, and Benavidez agreed to bring the cocaine to Specht's apartment in Corona, California.

On November 26, Victor Corona arrived at Benavidez's residence with the cocaine. He removed some of the cocaine from the trunk of the Lincoln he was in and gave it to Benavidez and Carrillo, who placed it in a red cooler. Carrillo and Benavidez then drove to Specht's house in Carrillo's Camaro, and Corona followed in the Lincoln. The Camaro and the Lincoln parked near Specht's residence, and Carrillo and Benavidez went to the door. After Carrillo took the cocaine out of the cooler and handed it to Agent Jackson, the police arrested all of those involved. Corona was one of three people in the Lincoln and was sitting in the right rear seat, according to one of the arresting officers. The police found a loaded nine millimeter Beretta handgun in a pouch directly in front of where Corona was sitting. Corona was the gun's registered owner.

Almost a year later, on September 21, 1992, two U.S. Marshals went to a house in Pico Rivera, California to search for Corona. When the marshals saw Corona get into a Thunderbird parked in the driveway, they turned on their lights and blocked the driveway. Corona drove at them, forcing the marshals to drive out of the way. Corona then eluded the marshals' pursuit. This incident led to count five in the indictment charging Corona with assaulting, resisting, or impeding a federal officer.

On October 28, 1992, a police detective seized Corona's wallet and found what he believed to be "phone lists for customers for narcotics." These lists, written on business cards, contained over 100 first names and phone numbers. They were introduced at trial as Rule 404(b) evidence and became exhibits 43 through 48.

Prior to trial, the defense moved to have the court sever count five because it was unrelated to the other counts. The judge initially denied the motion, but then changed his mind at the close of the government's case and granted the motion. Corona was convicted on the other four counts: conspiracy to possess with intent to distribute cocaine, two counts of distribution of cocaine, and unlawful use of a firearm during a drug trafficking crime. The district court sentenced him to three concurrent 210 month terms on the first three counts and one concurrent 60 month sentence on count four, 785 F.Supp. 884.

## II

## DISCUSSION

### A. Venue

■ Corona argues venue was improper in Nevada on counts two through four because those substantive crimes took place entirely in California. We review for abuse of discretion a district court's ruling on a motion for change of venue, *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir.1988), but we review de novo the underlying legal basis for such a motion.

■ Article III of the Constitution, the Sixth Amendment, and Rule 18 of the Feder-

al Rules of Criminal Procedure all guarantee that a defendant will be tried in the state where the crimes were committed.[1] *See United States v. Contreras–Ceballos,* 999 F.2d 432, 434 (9th Cir.1993); *United States v. Barnard,* 490 F.2d 907, 910 (9th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); Fed.R.Crim.P. 18. " 'Questions of venue in criminal cases are not merely matters of formal legal procedure. They raise deep issues of public policy.' " *Barnard,* 490 F.2d at 910 (quoting *United States v. Johnson,* 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944)).

Although Corona never set foot there, Nevada was a proper venue for the conspiracy charge (count one) because it was the site of the initial agreement and subsequent phone calls planning the drug transaction. Venue for a conspiracy charge "is appropriate in any district where an overt act committed in the course of the conspiracy occurred. It is not necessary that [the defendant] himself have entered or otherwise committed an overt act within the district, as long as one of his coconspirators did." *Meyers,* 847 F.2d at 1411 (citations omitted).

■ The question we must answer, however, is whether Nevada was the proper venue for the substantive crimes arising from the conspiracy—distribution of cocaine (counts two and three) and use of a firearm during drug trafficking (count four)—which occurred entirely in California.[2] The government claims the *Pinkerton* principle—the principle that conspirators can be responsible for the substantive offenses of their coconspirators—is a sufficient basis for venue in Nevada. *See Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). This principle, however, does not appear to control the question before us. What the government is essentially arguing for is a rule of law allowing venue over a substantive crime committed in furtherance of a conspiracy in any district where venue is proper for the conspiracy charge. While such a rule might make some

sense from a policy standpoint, it runs counter to the venue principles established by the Constitution, the Federal Rules of Criminal Procedure, and the federal courts.

■ "[W]hen a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1188 (2nd Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). The court must conduct a separate venue analysis for the substantive crimes and the conspiracy, even if the substantive crimes are committed in furtherance of the conspiracy. *See United States v. Jordan,* 846 F.Supp. 895, 898 (D.Nev.1994). The question before us, therefore, is whether for venue purposes the substantive offenses of cocaine distribution and use of a firearm can be considered to have taken place in Nevada. We conclude they cannot.

■ Crimes consisting of a single non-continuing act are "committed" in the district where the act is performed. *Beech–Nut,* 871 F.2d at 1188. Crimes that are not unitary but instead span space and time, however, may be considered continuing offenses under 18 U.S.C. § 3237(a). *Id.* Continuing offenses may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. 3237(a).

■ In order to determine for venue purposes where a crime occurred "we examine the key verbs in the statute defining the criminal offense to find the scope of relevant conduct." *United States v. Georgacarakos,* 988 F.2d 1289, 1293 (1st Cir.1993) (internal quotations omitted). The key verb in the statute at issue in this case is "distribute," *see id.* Although some of the initial arrangements for the drug deal in this case took place in Nevada, "[a]ctions which are merely preparatory or prior to the crime are not probative in determining venue.... [O]nly actions by the defendant which constitute ... distributing ... are probative in determining

---

1. Article III, Section 2 says, "The trial of all Crimes, except in the cases of Impeachment, shall be by Jury; and such Trial shall be in the State where the said Crimes shall have been committed...."

2. We need not discuss count five (resisting arrest) because this charge was severed from the others during the trial.

venue." *Id.* Because the distribution here took place entirely in California, venue was not proper in Nevada. The acts of preparation that occurred in Nevada are simply not relevant to this issue.

The few courts that have addressed this question have reached the same conclusion. In *United States v. Walden,* 464 F.2d 1015 (4th Cir.), *cert. denied,* 409 U.S. 867, 93 S.Ct. 165, 34 L.Ed.2d 116 (1972), the defendants were charged both with conspiracy to rob a group of banks and with a number of substantive counts of bank robbery arising from the conspiracy. Many of the banks they were charged with robbing were not in South Carolina, where the trial took place. The Fourth Circuit concluded that while enough planning and preparation took place in South Carolina to establish venue for the conspiracy charge, South Carolina was not the proper venue for the substantive counts of robbing out-of-state banks. The court declined to accept the district court's reasoning that an offense begins, for venue purposes, where any act in furtherance of its execution is performed. This analysis, the court stated, "overlooks the legal distinction between preparation for a crime and commission of the crime itself, and is contrary to the spirit and letter of the Constitution." *Id.* at 1018. The court concluded, "A decision by the United States to prosecute for conspiracy is not without some advantage to the government. To add to the advantages already existing by engrafting a forum shopping option as to substantive offenses would, we think, go too far." *Id.* at 1020 (citations omitted).

In *Beech–Nut,* the defendants were charged with both conspiracy and the substantive offense of introducing adulterated apple juice into the stream of interstate commerce. They were tried in the Eastern District of New York, although their only connection with that district was that they placed orders for the adulterated juice by making phone calls and sending letters to brokers located there. Reversing the convictions on the substantive counts for improper venue, the Fourth Circuit stated, "Though the orders for the adulterated concentrate were undoubtedly acts in furtherance of the conspiracy, they were not part of the substantive ... offenses." *Beech Nut,* 871 F.2d at 1191.

In *United States v. Jordan,* the District Court of Nevada dealt with the exact question Corona poses. The defendant was charged with both conspiracy to possess with intent to distribute methamphetamine and distribution of methamphetamine. The distribution took place entirely in California, yet the defendant was tried in Nevada. The government made the same argument in support of venue that it makes in Corona's case—that by deciding Nevada is not a proper venue, the court will undermine *Pinkerton* coconspirator liability. The district court stated:

> The government misstates the case. The question is not whether venue exists, but where venue exists. Venue over the offenses charged in Counts two and three appears to exist in California.... There is no danger of the bogey-man the government claims to lurk around the corner. There is no danger that Defendant may escape any criminal liability for Counts two and three due to a complete lack of venue.

. . . . .

> Nothing in *Pinkerton* or any other case we found indicates that once a defendant is charged with a conspiracy offense, venue over independent substantive crimes committed in furtherance of the conspiracy will automatically exist in any district having venue over the conspiracy offense.

846 F.Supp. at 898.

The primary case relied on by the government on this issue, *United States v. Stitzer,* 785 F.2d 1506 (11th Cir.1986), is distinguishable because it deals with the venue implications of a different offense defined with a different key verb: *possession* of a controlled substance with intent to distribute. The cocaine in question in *Stitzer* had been possessed with the requisite intent in the state in which the trial was held (Florida), and one of the out-of-state codefendants to whom it was delivered in Chicago was linked to its possession in Florida as an aider and abetter and a coconspirator. Over objection by the out-of-state defendant, the Eleventh Circuit

held that venue was proper in Florida based on their view that the possession with intent to distribute to which the defendant was adequately linked had occurred in that state. Using the key verb test that we adopt in this opinion, we would agree with the result in *Stitzer* because the possession occurred in the state in which the case was tried. But here, the crime of distribution, as we have explained, did not occur in Nevada. Thus, we have no quarrel with the result in *Stitzer*, but do not believe it dictates the conclusion in this case.

As the Fourth Circuit stated in *Walden*, "venue is not mere formalism. The right to a trial before a jury of the vicinage is fundamental and such a trial ought to be held at the place of commission of the substantive offense." 464 F.2d at 1020. The constitutional and rule-based principles of venue law support Corona's argument that venue was improper in Nevada on counts two through four. The case law lends further support. We therefore reverse the convictions on these counts for improper venue.[3] If the government desired to litigate all these offenses in a single trial, it could have and should have done so in California.

## B. 404(b) Evidence

■ Corona claims the district court erred in admitting exhibits 43 through 48 and Officer Wadley's testimony identifying the exhibits as drug customer lists under Rule 404(b) of the Federal Rules of Evidence. We review for abuse of discretion a district court's admission of evidence under Rule 404(b), *United States v. Luna*, 21 F.3d 874, 878 (9th Cir.1994), and we conclude the district court properly admitted the evidence.[4]

■ Rule 404(b) allows the admission of other crimes or bad acts for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake or accident." Fed.R.Evid. 404(b). Evidence of subsequent, as well as prior acts is admissible to show the defendant's state of mind. *See United States v. Conkins*, 9 F.3d 1377, 1382 (9th Cir.1993). This circuit has adopted a 4-part test for the application of Rule 404(b): "evidence of prior or subsequent criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *Luna*, 21 F.3d at 878.

■ Corona's subsequent possession of a list of drug customers is relevant to a material element of the charged offenses because it tends to show knowledge and intent. *See United States v. Arambula–Ruiz*, 987 F.2d 599, 603 (9th Cir.1993) (defendant's prior conviction for heroin possession is relevant to knowledge when he is again charged with heroin possession and claims he was an "innocent bystander"). While the 404(b) evidence does not conclusively prove Corona knew about the November 26, 1991 drug deal, it casts doubt on his claimed ignorance about the transaction.

The eleven month period between Corona's arrest and the time police found exhibits 43 though 48 in his wallet was not too long to make the subsequent conduct too remote to be admissible. *See United States v. Jones*, 982 F.2d 380, 382 (9th Cir.1992) (evidence of 1985, 1986 and 1987 smuggling operations admissible at trial for 1988 offense); *United States v. Ayers*, 924 F.2d 1468, 1474 (9th Cir.1991) (subsequent acts ranging from nine months to two years after the charged offense were not too remote).

While the government did not conclusively establish that the exhibits in question were drug customer lists, it did provide sufficient

---

**3.** Because we reverse Corona's convictions on counts two through four for improper venue, we do not address his other objections to these convictions.

**4.** It is not entirely clear that this evidence constitutes evidence of other bad acts or crimes. If it does not, it would not be subject to the Rule 404(b) restrictions. We need not decide this issue, however, because we conclude that even

under the stricter Rule 404(b) requirements, the district court properly admitted the evidence. Moreover, counsel's only timely objection to this evidence at trial was that it was "argumentative" and "irrelevant," not that the officer who identified the cards as drug customer lists lacked the qualifications or experience to render such an opinion.

882

proof of what they were for the purpose of Rule 404(b). Detective Wadley's expert testimony, combined with the fact that the cards had over 100 listings consisting overwhelmingly of first names or aliases and phone or pager numbers, constituted sufficient evidence the exhibits were customer lists. Corona's attempt on the stand to explain away these lists is highly suspect.

The final element of the 4–part test—similarity—is not always a prerequisite to admissibility under Rule 404(b). *Arambula–Ruiz,* 987 F.2d at 603. "When offered to prove knowledge, ... the [subsequent] act need not be similar to the charged act as long as the [subsequent] act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Id.* (internal quotations omitted) The customer lists satisfy this requirement because they cast substantial doubt on Corona's innocent bystander defense.

The 404(b) evidence satisfies the 4–part test—the district court did not abuse its discretion in admitting it.

**C. Count Five Evidence**

Corona argues the district court erred by initially denying his motion to sever count five and by allowing the government to present evidence in support of this count before ultimately granting the severance motion. We do not agree.

We review a district court's decision whether to sever for abuse of discretion. *United States v. Cuozzo,* 962 F.2d 945, 949 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992). Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict. *United States v. Chu Kong Yin,* 935 F.2d 990, 994 (9th Cir.1991).

Corona claims he was unfairly prejudiced by the testimony of two deputy United States Marshals who testified that Corona fled from them. However, the district court struck this testimony from the record and instructed the jury a number of times in

great detail to disregard what they had heard. "[O]ur court assumes that the jury listened to and followed the trial judge's instructions." *United States v. Baker,* 10 F.3d 1374, 1388 (9th Cir.1993) (internal quotations omitted); *see also Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"). Furthermore, "[t]he district court's careful and frequent limiting instructions militate against finding an abuse of discretion." *Baker,* 10 F.3d at 1388; *see also Cuozzo,* 962 F.2d at 950. Finally, the evidence relating to count five was only a very small portion of the government's evidence against Corona. We conclude the district court did not abuse its discretion by admitting this evidence before ultimately striking it and granting Corona's severance motion.

III

CONCLUSION

We affirm Corona's conspiracy conviction, but we reverse the convictions on the substantive counts and remand to the district court for dismissal of those counts for improper venue and for resentencing.[5]

---

5. We do not address the question of whether the Double Jeopardy Clause now bars the government from trying Corona in California on the substantive counts. This issue would only become ripe if the government did attempt a second prosecution.