**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey B. POMRANZ, Defendant–
Appellant.**

No. 93–9135.

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied March 15, 1995.

Pamela A. Wilk, Peter Goldberger, Ardmore, PA, for appellant.

J. Michael Worley, Asst. U.S. Atty., Paul E. Coggins, U.S. Atty., Fort Worth, TX, for appellee.

Before REYNALDO G. GARZA, DeMOSS and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Jeffrey B. Pomranz (the "appellant") was convicted on March 10, 1989, by a jury on all thirteen counts of a superseding indictment.[1] Count one of the indictment charged the appellant with conspiracy to distribute over 1000 kilograms of marihuana in violation of 21 U.S.C. § 846; counts two and fifty-one through fifty-three charged unlawful use of a communication facility in violation of 21 U.S.C. § 843(b); counts fifty-four through

fifty-nine charged interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952; count sixty charged aiding and abetting the possession with intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and count sixty-one charged unlawful use of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

On May 12, 1989, the district court sentenced Pomranz under the Sentencing Reform Act to 216 month concurrent prison terms on each of counts one, two and fifty-one through sixty. On count sixty-one, the court imposed a 60 month consecutive prison term, as required by § 924(c)(1). The court further imposed a five-year mandatory minimum term of supervised release and a mandatory $650 in special assessments. This Court affirmed the judgment on May 22, 1990, in *United States v. Pomranz*, 904 F.2d 703 (5th Cir.1990) (table).

Pomranz filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging for the first time that venue was improper in his conviction on count sixty-one of the superseding indictment. He also alleged that his counsel was ineffective for failing to ever raise that issue. Pomranz appeals the lower court's decision denying the requested relief. For the reasons below we affirm.

## FACTS

The district court adequately summarized the facts of this case as follows:

The evidence at trial established that during the months of October and November 1988, Defendant Pomranz met several times with Mike DeLaFlor, an undercover DEA agent in Fort Worth, for the purpose of arranging the purchase of 4,000 pounds of marijuana. After several meetings in Texas and conversations on the phone, Pomranz and DeLaFlor agreed that the marijuana would be transported in two shipments of 2,000 pounds each at a total purchase price of $1.6 million, with $100,-

---

**1.** On December 7, 1988, a grand jury indicted Pomranz in sixty-one counts for conspiracy to distribute marihuana and other drug-related of-

fenses. Counts three through fifty of the sixty-one count superseding indictment were dismissed at the government's request.

000 as front money, another $100,000 when the marijuana was delivered to the Dallas area, and then $400,000 to $800,000 after the marijuana was delivered to Pomranz.

The first payment of approximately $100,000 was made on November 12 by one of the men working for Pomranz. After having the marijuana shipment initially inspected in Dallas, Pomranz met DeLaFlor in Arlington, Texas, on November 17, 1988 and made the second $100,000 payment. That evening, DeLaFlor left for Oklahoma City to obtain the final payment from Pomranz. This payment was agreed to be made only after Pomranz received verification that the marijuana was in the hands of his people in Dallas.

On November 18, 1988, Pomranz arrived at the Oklahoma City motel in which DeLaFlor had taken a room. Before entering the motel, Pomranz secreted an automatic weapon in his jacket and then proceeded to DeLaFlor's room carrying a box containing more than $400,000. Pomranz and DeLaFlor then waited in the motel room for word that the marijuana had changed hands. After the marijuana was transferred, the authorities arrested several of Pomranz's co-conspirators in Texas, and then Pomranz himself in Oklahoma.

The 2255 motion is directed at count sixty-one of the indictment, which reads as follows:

On or about November 18, 1988, [the appellant] did unlawfully use and carry a firearm, that is, a Raven, Model P–25, .25 caliber handgun, serial number 640102, in *Oklahoma City, Oklahoma,* during and in relation to a drug trafficking crime occurring in the Northern District of Texas and elsewhere, as alleged in Count [one] and Count [sixty] of this indictment.

(emphasis added). Evidence was presented at trial showing that Pomranz possessed the gun in Oklahoma City at the time of his arrest on November 18, 1988, as alleged in the indictment. However, no evidence was presented to indicate that Pomranz used or carried the weapon at any time within the Northern District of Texas, or that he transported the weapon from Texas to Oklahoma.

## DISCUSSION

The appellant asserts that venue on count sixty-one was improper because the § 924(c)(1) charge could be prosecuted only where the firearm was "used" or "carried," i.e., in Oklahoma. Although the issue was never raised at trial or on direct appeal, Pomranz further argues that waiver of a good venue defense must be knowing and intelligent on the part of the defendant. In addition, Pomranz claims that his counsel's failure to raise the alleged venue defense proves he was afforded ineffective assistance of counsel. Because this Court finds that venue was proper, the appellant's conviction is affirmed.

*Venue law*

Article III, section 2, clause 3 of the United States Constitution provides that "The Trial of all Crimes, except in Cases of Impeachment, shall be ... held in the State where the said Crimes shall have been committed...." The Sixth Amendment expands this rule and expresses it as a right of the accused by providing that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed...." U.S. CONST. amend. VI. In addition, the Federal Rules of Criminal Procedure ensure this constitutional right by providing that "[e]xcept as otherwise permitted by statue or by these rules, the prosecution shall be had in a district in which the offense was committed." FED.R.CRIM.P. 18. These provisions reflect that in criminal cases the question of venue is not a legal technicality, instead, it is a significant matter of public policy. *United States v. Johnson,* 323 U.S. 273, 276, 65 S.Ct. 249, 250–51, 89 L.Ed. 236 (1944).

Congress has provided that:

[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of or prosecuted in any district in which such offense was begun, continued or completed.

18 U.S.C. § 3237(a). Furthermore, venue in conspiracy cases is proper in any district where the agreement was formed or where

an overt act in furtherance of the conspiracy was performed. *United States v. Caldwell,* 16 F.3d 623, 624 (5th Cir.1994); *United States v. Winship,* 724 F.2d 1116, 1125 (5th Cir.1984).[2] Since, a conspiracy to distribute marihuana is a continuing offense under section 3237,[3] venue may lie in any district where an overt act was committed.

■ In light of the conspiracy law, Pomranz does not contend that he was improperly tried for the conspiracy count in the Northern District of Texas since overt acts occurred there. He further agrees that he was properly tried in Texas for the other substantive offenses that he committed while in that state. However, Pomranz affirmatively claims that the constitution guarantees his right to be tried in Oklahoma for the substantive offense under § 924(c) because the weapon was carried only in that state, not Texas. Appellant argues that the conspiracy venue should not automatically extend to the substantive offense and consequently, an independent venue analysis should be conducted regarding that offense. Pomranz supports his argument with *United States v. Corona,* 34 F.3d 876 (9th Cir.1994).

In *United States v. Corona,* the defendant was tried and convicted in the state of Nevada for conspiracy to distribute narcotics and the substantive crimes arising from the conspiracy—distribution of cocaine and use of a firearm during drug trafficking. The substantive crimes occurred in California only, while overt acts in furtherance of the conspiracy were committed in both California and Nevada. The defendant argued on appeal that venue was improper laid in Nevada for the substantive offenses.

In light of these claims, the Ninth Circuit decided that a court must conduct a separate venue analysis for the substantive crimes and the conspiracy, even if the substantive crimes were committed in furtherance of the con-

spiracy. *Id.* at 879 (citing *United States v. Jordan,* 846 F.Supp. 895, 898 (D.Nev.1994)). Due to this analysis, the Court determined that venue was improper in Nevada for the prosecution of the substantive offenses. More specifically, it concluded that a conviction under § 924(c) could not be prosecuted where the conspiracy venue lay if the weapon was also not used or carried in that venue. For the reasons discussed below, we disagree with the conclusion drawn on that count.

*Section 924(c)*

Congress enacted Section 924(c) as part of the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1213, in the wake of the assassinations of Martin Luther King and Robert Kennedy, as part of a comprehensive response to the "increasing rate of crime and lawlessness and the growing use of firearms in violent crime." *United States v. Correa–Ventura,* 6 F.3d 1070, 1084 (5th Cir.1993) (quoting H.R.Rep. No. 1577, 90th Cong., 2d Sess. 7 (1968), *reprinted in* 1968 U.S.S.C.A.N. 4410). Since then, the original version of § 924 has been modified several times to deal with modern concerns. The current version of section 924 provides in pertinent part:

> (c)(1) [w]hoever, *during and in relation to any* crime of violence or *drug trafficking crime ... uses or carries a firearm, shall,* in addition to the punishment provided for such crime of violence or drug trafficking crime, *be sentenced to imprisonment for five years.... Notwithstanding any other provision of law,* the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, *nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment* including that imposed for the crime of violence or drug trafficking

**2.** The Supreme Court approved this rule despite its dilutent effect upon venue rights, permitting trials of defendants in district where they have never set foot. *Winship,* 724 F.2d at 1125 (citing *Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912)).

**3.** "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single

impulse and operated by an unintermitent force, however. long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each." *United States v. Midstate Horticultural Co.,* 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563 (1939) (quoting *Armour Packing Co. v. United States,* 153 F. 1, 5–6 (8th Cir. 1907)).

crime in which the firearm was used or carried.

18 U.S.C. § 924 (emphasis added). This Court interpreted the statute to mean that the mere carrying or use of a firearm was not the criminal *actus reus* prohibited by the statute, instead it was the employment of the weapon in the context of another predefined crime. *Correa–Ventura*, 6 F.3d at 1083 (the "essence" of the offense was that a criminal defendant used a firearm in committing another federal crime). Congress specifically intertwined the penalty provisions of § 924 with the underlying offense in order to alleviate fears that a person could be convicted for carrying a weapon if he was not involved in a drug trafficking offense (or violent crime). *Id.* at 1084. Thus, only the act of carrying a weapon "during and in relation to ... [a] ... drug trafficking crime" is a substantive offense under § 924(c)(1).

In *Correa–Ventura*, we also noted that a "common thread throughout the amendments to Section 924(c) [was] the consistent increase in deterrence value." *Id.* For example, after the Supreme Court decided that a Section 924(c) penalty could not be layered onto a predicate statute containing its own enhancement provision,[4] Congress responded by amending the statute to make clear its intent that the defendant be sentenced under both enhancement schemes, thus maximizing the punishment. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 1005, 98 Stat. 1837, 2138–39. *See also* S.Rep. No. 225, 98th Cong., 1st Sess. 312–15 (1983) *reprinted in* 1984 U.S.S.C.A.N. 3182, 3490–92. The statute underwent further changes to increase the severity of punishment for this offense by: (1) requiring that the mandatory sentence run *consecutively* rather than *concurrently* with that of the predicate crime, (2) substantially increasing the mandatory penalties for violations, and (3) denying parol or probation privileges during the 924(c) sentence. *Correa–Ventura*, 6 F.3d at 1084–85 (internal citations omitted). It remains patently clear then, that Congress intended this section to act as a *maximum* deterrence against using firearms in connection with other crimes. *Id.* at 1083.[5]

*Overt Acts*

■■■ In order to properly reach a decision, this Court must not only examine the language of the statute and the purpose behind it, we must also review the overt acts committed by the defendant during the underlying drug transaction. An overt act, is an act performed to effect the object of a conspiracy, although it remains separate and distinct from the conspiracy itself. Though the act need not be of a criminal nature, it must be done in furtherance of the object of the conspiracy. However, if the act constitutes a substantive crime, the defendant may be prosecuted for both the conspiracy offense *and* the substantive crime as separate crimes. *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975).

In this case, various acts were committed in furtherance of the drug conspiracy. For instance, after the initial contact between Pomranz and agent DeLaFlor: telephone conversations ensued between the parties to finalize the drug transaction, Pomranz traveled from Oklahoma to Texas to personally discuss the illegal activity, plans to inspect a sample of the marihuana before the actual purchase were consummated, installments on the total purchase price were made and most crucial to this analysis, Pomranz carried a weapon during and in relation to delivery of the final drug payment. Unquestionably, the primary reason that Pomranz carried a weapon was to protect or further the drug transaction by ensuring the safe delivery of the drug money.

This situation is not altogether different from cases where this Court held that the proximity of a weapon to the drugs was proof that the weapon involved could have been used to protect or have the potential of facilitating the operation, and that the presence of

---

**4.** *See Simpson v. United States*, 435 U.S. 6, 16, 98 S.Ct. 909, 915, 55 L.Ed.2d 70 (1978); *Busic v. United States*, 446 U.S. 398, 404, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980).

**5.** The legislation's sponsor, Representative Poff, stated that a primary objective of the provision was to "persuade the man who is tempted to commit a Federal felony to leave his gun at home." 114 Cong.Rec. 22,231 (1968).

the weapon was connected with the drug trafficking. *See, e.g., United States v. Featherson,* 949 F.2d 770, 776 (5th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992); *United States v. Blake,* 941 F.2d 334, 342–43 (5th Cir.1991), *cert. denied,* — U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 533 (1992). In those cases, the proximity of the weapon to the drugs constituted a violation of § 924(c)(1). Likewise, in such a high-level drug operation as the one before us,[6] the proximity of the weapon to the drug money also constitutes a violation of this section. The use of firepower to protect the money involved in the drug trafficking simply increased the likelihood that the aim of the conspiracy would be accomplished.

*Public Policy*

If, as Pomranz argues, venue was improper in Texas, an immensely undesirable result would have ensued. It would have necessitated that the government gather its resources and conduct an entirely new trial in Oklahoma to ensure that the appellant receive a consecutive five year sentence for carrying a weapon during the drug transaction. This in turn, would have required the government to duplicate its efforts and once again lay the foundation for the firearm offense, i.e., establish the elements of the conspiracy to distribute over 1000 kilograms of marihuana since it must prove that the firearm was carried or used during and in relation to a drug trafficking offense.[7] The end result of such action would impede the administration of justice because the government would be left with a difficult decision: expend its limited resources in prosecuting the felon a second time for this separate offense, or satisfy itself with the punishment

previously imposed and forfeit a conviction on the weapons's count.

If the latter choice were elected, it would effectively undermine the Congressional intent to curb the violence inherently associated with high level drug deals. Defendants like Pomranz could routinely escape the penalty envisioned by Congress, i.e., the five year consecutive sentence, when their illegal activities transversed multiple state boundaries. A tool designed by the Legislature to combat and deter the violence on the nation's streets would be left impotent. Public policy dictates that such an outcome be avoided. Moreover, the highest Court has instructed us that venue "be determined from the *nature of the crime alleged* and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946) (emphasis added).

The crime before us deals with the use of a weapon "during and in relation to … [a] … drug trafficking crime." Its nature is primarily designed to prevent the violence associated with the *consummation of drug transactions* (and other violent crimes). Section 924(c)(1) is a distinct offense that affirmatively supplements and maximizes punishment for the use of a weapon in the underlying offense. In addition, the acts involved in the predicate drug offense were peppered within two districts. In light of the nature of § 924(c) and the location of the acts involved, we hold that a defendant who is indicted for using or carrying a weapon in connection with a drug trafficking offense may be prosecuted and convicted for violating § 924(c)(1) in the same venue as the underlying drug offense.[8]

---

6. The evidence adduced at trial did not only establish the leadership role played by Pomranz, it also revealed the sophisticated nature of the criminal enterprise. The marihuana smuggling ring employed safe houses to store the contraband, several vehicles to transport it, false driver's licenses, handheld radios, surveillance detection equipment and of course, at least one firearm.

7. The main problem we are faced with is the fact that a prosecution for carrying or using a firearm cannot be bifurcated from the underlying drug crime. In the case at bar, because the penalty provisions of § 924(c)(1) are intertwined with the

predicate crime, the defendant must first be proven guilty of the conspiracy to distribute marihuana before proceeding with the § 924 offense. Thus, the need to re-establish a conspiracy arises.

8. Pomranz also claims that *United States v. Davis,* 666 F.2d 195 (Former 5th Cir.1982), authoritatively establishes for this Circuit that the venue for the conspiracy charge does not dictate the venue for a related substantive charge. In *Davis,* this Court reversed the district court's finding of proper venue in the Middle District of Georgia on the substantive charge of possession with intent to distribute methaqualone, despite

■ In this case, the underlying drug trafficking offense was a conspiracy to distribute marihuana; an offense which may be prosecuted in any district where an overt act was performed. Carrying a firearm to protect the delivery of drug money was an overt act committed "during and in relation to" the drug conspiracy. Consequently, a violation of section 924(c)(1) should be tried in any district where the underlying conspiracy venue was proper, namely Oklahoma or Texas.

The initial predicate necessary for a violation of § 924(c)(1) is a crime of violence or drug trafficking. It is only when a firearm is used or carried during and in relation to such violent or drug trafficking crime that the § 924(c)(1) offense becomes complete. Since the indispensable predicate offense is as important or essential to the completed offense as the carrying or using of the firearm and since the use or carrying of the firearm itself must be made during and in relation to such predicate offense, it only follows that venue should be allowed where the violent crime or drug offense occurred. Thus, a firearm may be used in one state but it does not preclude a commission of a § 924(c)(1) offense in another state.

Moreover, we do not believe that our holding seriously infringes on the defendant's rights since this Court treats the right to venue with less deference than other constitutional rights. For example, this Court has commented that

> [a]lthough venue is a constitutional right and an element of every crime, and despite the Supreme Court's command that it not be treated as a formality, courts

have dealt with venue questions differently from other constitutional rights and other elements of crimes. For instance, the standard for finding a waiver of venue is much more relaxed than the rigorous standard for finding waivers of the right to trial by jury, the right to confront one's accusers or the privilege against compulsory self incrimination. As opposed to waiver of these later rights, a defendant can waive venue rights by his silence—just by his failure to lodge an objection prior to trial.

*United States v. Winship,* 724 F.2d 1116, 1124 (5th Cir.1984) (internal citations omitted) (emphasis added).

Because we find that venue was proper in the Northern District of Texas for the § 924 violation, we need not address appellant's remaining points of error. The denial of his 2255 motion on the basis of venue is affirmed.

## CONCLUSION

For the reasons discussed above, we find that venue was proper in the Northern District of Texas for appellant's violation of § 924(c)(1). Therefore, we affirm the mandatory five year consecutive imprisonment term imposed on the appellant.

AFFIRMED.

the fact that it had upheld the propriety of venue there on the related conspiracy count.

The Court stated that "the government had the burden of proving that the conspirators had both possession of and the intent to deliver the methaqualone at the time [the defendants] were in the Middle District of Georgia. This burden was not met since neither [of the defendants] actually or constructively possessed the methaqualone in question until [they] arrived in Florida." *Id.* at 200. (internal citations omitted). We agree with appellant that in *Davis,* due to the facts and the *specific crimes* with which the defendants were charged, that venue for the substantive offense had been improper in the Middle District of Georgia. *Davis,* however, is distinguishable from the case before us.

Although the cases appear to be similar, the substantive counts in question were based on different statutes and that is where the difference lies. The clear language of § 924 and the Congressional purpose behind it differentiates it from other offenses, including possession with intent to distribute a narcotic. Due to the specific nature of this crime and the difficulties inherently involved in prosecuting it, the government must be allowed to try the defendant in the district where the act was committed, or in a district where venue would properly lie for the underlying drug crime. Therefore, since this case is centered on an entirely different statutory offense, our holding is not in conflict with *Davis.*