ALITO, Circuit Judge,
concurring in part and dissenting in part:
I join the opinion of the court except insofar as it reverses Moreno’s conviction under 18 U.S.C. § 924(c)(1) on the ground that venue in the District of New Jersey was constitutionally impermissible. The majority reaches this result based on the so-called “verb test.” Applying this test, the majority holds that a violation of 18 U.S.C. § 924(c)(1) may be prosecuted only where the defendant used or carried the firearm and not where the defendant committed the underlying crime of violence or drug trafficking crime. Accord United States v. Corona, 34 F.3d 876, 879 (9th Cir.1994).[1]
I disagree with this analysis and conclusion. Instead of relying solely on the “verb test,” I think that we should inquire where, in substance, the offense was “committed.” United States Constitution, Art. Ill, sec. 2, cl. 3 & Amend. VI. In other words, we should make a realistic appraisal of the “nature of the crime” defined by the statute. Gf. United States v. Anderson, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). When the offense created by 18 U.S.C. § 924(c)(1) is examined in this way, it is apparent that the commission of the crime of violence or drug trafficking crime is a critical element of the offense and that permitting venue in a district in which the commission of this underlying crime occurred is consistent with the Constitution’s venue provisions.[2] Accord United States v. Pomranz, 43 F.3d 156, 161-62 (5th Cir.1995);[3] United States v. Friedman, 1996 WL 612456, *6 (E.D.N.Y.).
I.
The criminal statute at issue here provides, in pertinent part, as follows:
Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years----[4]
18 U.S.C. § 924(e)(1) (emphasis added). “[Ujses” and “carries” are verbs. “[DJuring and in relation to any crime of violence or *860 drug trafficking crime” is a prepositional phrase. Under the majority’s “verb test,” venue is proper in only those districts in which occurred actions denoted in the relevant criminal statute by verbs. Accordingly, in this case, the majority concludes, the “verb test” restricts venue to the District of Maryland, where Moreno carried a firearm, and precludes venue in those other districts, including the District of New Jersey, through which the crime of violence, kidnapping, moved.
The verb test thus makes syntax constitutionally determinative. Consider the result that would follow if 18 U.S.C. § 924(c) were rephrased slightly as follows:
Whoever during and in relation to commits any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States and during and in relation to that crime uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.
This version is wordier than the original, but its meaning is the same. However, because of the addition of the verb “commits,” the “verb test” would presumably permit venue in any district in which the crime of violence or drug trafficking crime was committed. I cannot believe that the meaning of the constitutional restrictions on venue turns on such syntactical trifles.
The apparent author of the “verb test,” Judge Armistead M. Dobie of the Fourth Circuit, does not seem to have claimed any such office for his creation. In the article usually cited as the source of the test, Judge Dobie wrote:
All federal crimes are statutory, and these erimes are often defined, hidden away amid pompous verbosity, in terms of a single verb. That essential verb usually contains the key to the solution of the question: in what district was the crime committed. Without the exact language of the statute, particularly this verb, paraphrases and loose citations in this field, are more than inaccurate, they are positively misleading. When, as is so often the case, the statute enumerates several such verbs, only scrupulous, even meticulous, nicety in exact quotation can prevent these statutes, as well as the decisions under them, from proving a snare and delusion to the unwary.
Armistead M. Dobie, Venue in Criminal Cases in the United States District Court, 12 Va. L.Rev. 287, 289 (1926) (emphasis added); see also United States v. Walden, 464 F.2d 1015, 1018 (4th Cir.1972). As the quoted language demonstrates, Judge Dobie did not suggest that the verb test was “the proper” or “only” method to determine venue. He merely suggested that the verb test was “usually” the best method to determine venue. Cf. Norman Abrams, Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula, 9 UCLA L.Rev. 751, 777 (1962) (verb test, although important, “constitutes only the first step” in determining venue).
II.
Article III, section 2, clause 3 of the Constitution provides that “[t]he trial of all Crimes, except in Cases of Impeachment ... shall be held in the State where the said crimes shall have been committed ” (emphasis added).[5] Similarly, the Sixth Amendment states that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ” (emphasis added).[6] Is an offense “committed,” for constitutional purposes, in only those places in which actions denoted by verbs occurred? Perhaps this is obvious to the majority, but it is not apparent to me. Thus, the constitutional text, by it *861 self, does not seem to me to provide a sufficient basis for adopting the verb test.
Nor am I aware of other evidence that these constitutional provisions were meant to embody the verb test. On the contrary, the origin of these constitutional provisions shows that they were adopted to achieve important substantive ends — primarily, to deter governmental abuses of power. Cf. United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944) (“Questions of venue in criminal cases ... are not merely matters of formal legal procedure. They raise deep issues of public policy....”).
“As the difficulties between the American colonies and Great Britain increased during the period immediately prior to the American Revolution, those in authority who represented the royal interests became concerned that royal interests could not be adequately protected in American courts, particularly when American colonists were charged with crimes.” Drew L. Kershen, Vicinage 29 Okla. L.Rev. 803, 805 (1976). In 1769, despite warnings that such a measure might lead to war, Parliament revived an ancient statute under which American colonists accused of treason could be taken to England or another colony for trial. See William Wirt Blume, The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue, 43 Mich. L.Rev. 59, 63-64 (1944); Kershen, supra, 29 Okla. L.Rev. at 805-06. During the next few years, Parliament enacted similar laws applicable to persons charged with offenses such as destroying dock yards, magazines, ships, ammunition, or supplies. Blume, supra, 43 Mich. L.Rev. at 63; Kershen, supra, 29 Okla. L.Rev. at 806-07. Resentment against these measures was so deep that the Declaration of Independence denounced King George III “[f]or transporting us beyond Seas to be tried for pretended offenses.” This practice has been described as one of the precipitating factors of the American Revolution. See, e.g., Blume, supra, 43 Mich. L.Rev. at 63-67.
After the Boston Massacre, Parliament also passed a law, 14 Geo. Ill, c.39 (1774), designed to protect British soldiers who were charged in Massachusetts with capital offenses based on actions taken in suppressing riots or enforcing the revenue laws. Kershen, supra, 29 Okla. L.Rev. at 807. If it appeared to the governor that “an indifferent trial” could not be held in Massachusetts, the accused could be tried in England or another colony. Id. “This circumvention of the judgment of the victimized community was attacked as a ‘Mock Trial’ system in the Declaration of Independence.” Akhil Reed Amar, The Constitution and Criminal Procedure— First Principles 243 n.163 (1997).[7]
Following independence, several states adopted constitutional provisions limiting a criminal prosecution to the place where the crime was “committed”[8] or where the “facts” “ar[o]se”[9] or “happen[ed]”.[10] And a few years later, similar safeguards were placed in Article III, section 2, and the Sixth Amendment.[11]
Justice Story explained the purpose of these provisions as follows:
The object ... is to secure the party accused from being dragged to a trial in some distant state, away from his friends, and witnesses, and neighbourhood; and thus subjected to the verdict of mere strangers, who may feel no common sympathy, or who may even cherish animosities, or prejudices against him. Besides this; a trial in a distant state or territory might subject the party to the most oppressive expenses, or perhaps even to the *862 inability of procuring the proper witnesses to establish his innocence.
Joseph Story, Commentaries on the Constitution § 925 (Carolina Academic Press reprint 1987). Recent scholarship has suggested another possible purpose: to protect a community’s right to have trials of local offenses occur in the community. See Amar, supra, 124 & n. 163.
Against this background, I reject the suggestion that the meaning of the constitutional venue provisions is to be determined by diagramming the language of the relevant criminal statute. Would the framers have thought that prosecuting an American colonist in England on a charge of treason was permissible if Parliament had been able to craft a treason statute in which a verb denoted an action occurring in England? The answer is no. The constitutional venue provisions were meant to put in place important substantive protections against government abuse.
III.
The Supreme Court has never embraced the “verb test.” Rather, the Court has instructed that venue must be determined by looking to “the nature of the crime” and the “location of the act or acts constituting it.” United States v. Anderson, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). See also Travis v. United States, 364 U.S. 631, 635, 81 S.Ct. 358, 361, 5 L.Ed.2d 340 (1961); United States v. Cores, 356 U.S. 405, 408, 78 S.Ct. 875, 878, 2 L.Ed.2d 873 (1958). Nor, as far as I can tell, has any court of appeals held that the “verb test” is the only proper test for determining where venue is constitutionally permitted. Most of the cases suggest that, while the “verb test” may provide a useful first cut at determining venue, there are complicated crimes for which a rigid grammar-based test may not be appropriate. See, e.g., United States v. Cofield, 11 F.3d 413, 417 (4th Cir.1994) (examination of the verbs in a statute is not the exclusive method of determining venue; “there are crimes where the situs is not so simple of definition”) (quoting United States v. Billups, 692 F.2d 320, 332 (4th Cir.1982)); United States v. Newsom, 9 F.3d 337, 339 (4th Cir.1993) (“the verbs examination method is not exclusive”) (quotation omitted); United States v. Beddow, 957 F.2d 1330, 1335 (6th Cir.1992) (employing a “substantial contacts” test for determining venue); United States v. Beechr-Nut Nutrition Corp., 871 F.2d 1181, 1188-89 (2d Cir.1989) (same); United States v. Tedesco, 635 F.2d 902, 905 (1st Cir.1980) (verb test is “[o]ne” method of determining venue). Indeed, even the Ninth Circuit, whose analysis and conclusion in Corona the majority follows, has explicitly disavowed a reading of Corona that would suggest that the verb test was “the” interpretive tool to be used in determining venue. See Angotti, 105 F.3d at 544 (leaving open the question whether “focus on key verbs should be the exclusive measure of venue”).
IV.
Showing that rigid application of the “verb test” is wrong is simpler than setting out an alternative “test” that works in all cases, and I will not attempt to do the latter here. For present purposes, it is enough to show that in a prosecution under 18 U.S.C. § 924(c)(1) the commission of the crime of violence or drug trafficking crime is a sufficiently important element to permit venue in any district in which the defendant engages in that conduct.
It is apparent from the text of 18 U.S.C. § 924(c)(1) that the defendant’s commission of the underlying crime of violence or drug trafficking offense forms a vital part of the evil that Congress sought to punish and prevent. Although 18 U.S.C. § 924(c)(1) has been held to create an offense distinct from the underlying crime, see Anderson, 59 F.3d at 1326, it is noteworthy that this provision prescribes the imposition of a penalty “in addition to the punishment provided for [the] crime of violence or drug trafficking crime.” For this reason, 18 U.S.C. § 924(c)(1) has been described as constituting, at least in part, a “penalty enhancement statute.” Anderson, 59 F.3d at 1326. This surely demonstrates that a central focus, if not the central focus, of the statute is the commission of the underlying crime of violence or drug trafficking crime.
It is also telling that eight courts of appeals have held that “only one § 924(c)(1) *863 violation can be appended to any single predicate crime.” Anderson, 59 F.3d at 1328 (emphasis added); see also United States v. Cappas, 29 F.3d 1187, 1189 (7th Cir.1994) (citing cases); United States v. Lindsay, 985 F.2d 666, 674 (2d Cir.1993); United States v. Sims, 975 F.2d 1225, 1233 (6th Cir.1992); United States v. Moore, 958 F.2d 310, 312 (10th Cir.1992); United States v. Hamilton, 953 F.2d 1344, 1346 (11th Cir.1992); United States v. Privette, 947 F.2d 1259, 1262-63 (5th Cir.1991); United States v. Fontanilla, 849 F.2d 1257, 1258-59 (9th Cir.1988); but see United States v. Lucas, 932 F.2d 1210, 1222-23 (8th Cir.1991). If the use or carrying of the firearm were the heart of the offense and the commission of the underlying crime of violence or drug trafficking crime were a mere appendage that is insufficiently important to confer venue, these holdings would be hard to understand. Instead, one would expect these courts to have held that every single use or carrying of a gun in the context of a single drug crime or crime of violence would be a separate offense. The contrary holding by eight of the nine circuits to have addressed the issue reveals then-understanding that the underlying predicate offense in Section 924(c)(1) is at the center of Congress’s aim. See Pomranz, 43 F.3d at 160; United States v. Taylor, 13 F.3d 986, 993-94 (6th Cir.1994) (“the predicate offense, not the firearm, is the object of § 924(c)(1)”); United States v. Correa-Ventura, 6 F.3d 1070, 1083 (5th Cir.1993) (the “essence” of the offense was that the defendant used a firearm while committing another federal crime); but see Corona, 34 F.3d at 880 (predicate drug crime during which the firearm was used was no more than a preparatory act and hence could not confer venue).
Moreover, a defendant is at least as likely to have significant ties to a place where he is alleged to have committed the crime of violence or drug trafficking crime as he is to have significant ties to the place where he is alleged to have carried or used the firearm. And a defendant’s alleged commission of a crime of violence or drug trafficking crime is at least as likely to present a central issue at trial (thus making access to witnesses and proof important) as is the element of carrying or using a firearm. For these reasons, prosecuting a defendant under 18 U.S.C. § 924(c)(1) in a district in which the crime of violence or drug trafficking crime took place does not involve the type of government abuse that the constitutional venue provisions were meant to prevent.
Section 924(e)(l)’s legislative history confirms the critical importance of the element requiring proof that the defendant committed a crime of violence or drug trafficking offense. Representative Poff, Section 924(c)(l)’s sponsor, stated that this provision targeted “the criminal rather than the gun.” Anderson, 59 F.3d at 1327 (citing 114 Cong. Rec. at 22,231 (1968)). He explained that the provision sought to persuade those individuals seeking to commit certain felonies “to leave [their] gun[s] at home.” Id. at 1328 (citing 114 Cong. Rec. at 22,231). Indeed, he said that “the prosecution for the basic felony and the prosecution under my substitute would constitute one proceeding out of which two separate penalties may grow.” Id. at 1327 (citing 114 Cong. Rec. at 22,232) (emphasis added).
In sum, the predicate crimes defined in 18 U.S.C. § 924(c)(1), crimes of violence and drug trafficking crimes, are essential elements of the course of conduct that Congress sought to criminalize. I would hold, therefore, that venue for a prosecution under this statute lies in any district in which the defendant committed the underlying crime of violence or drug trafficking offense.
V.
If the majority’s adoption of the “verb test” is taken seriously and applied in all future venue cases, it will lead to difficulties.
For one thing, we will have to delve into questions of grammar that most of us probably left behind in secondary school. The majority suggests that venue questions require us to identify the “key verbs” in the statute, but it is not clear precisely what it means by a “key verb,” a term that I do not believe has grammatical significance. Does the term “key verb” mean a verb in the main clause? Or does it include any verb in a subordinate clause as well? This point recently divided the district court and the *864 Fourth Circuit in applying the “verb test” to 18 U.S.C. § 228(a), which provides in pertinent part as follows (emphasis added):
Whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).
The district court focused on the verb in the main clause (“fails”) and held that venue was proper where the payment was ordered to be paid, as opposed to where the child resided. Murphy v. United States, 934 F.Supp. 736, 739-40 (W.D.Va.1996). Reversing, the Fourth Circuit pointed to the verb “resides” in the subordinate clause and concluded that venue was also proper in the district of the child’s residence. Murphy, 117 F.3d at 139.
Whether or not a verb in a subordinate clause may qualify as a “key verb,” I assume that a “verbal phrase,” ie., a participial, gerund, or infinitive phrase, cannot qualify. As a grammar book explains:
Verbals are so called because they are formed from verbs. In some respects they act like verbs. They may express action; they may have modifiers; and they may be followed by complements. In one important respect, however, they are not like verbs: verbals are not used as verbs in a sentence. They are used as other parts of speech — as nouns, as adjectives, or as adverbs.
John E. Warriner and Francis Griffith, English Grammar and Composition 40-41 (1973).
If my assumption is wrong — if verbal phrases can qualify as “key verbs” — then I challenge the majority to explain why it is proper to look to this type of noun, adjective, or adverb (ie., a verbal serving as a noun, adjective, or adverb) and not others. On the other hand, if this assumption is right, then the verb test will lead to some surprising results.
There are a great many federal criminal statutes that are phrased along the following lines: It shall be unlawful to do x. See, e.g., 18 U.S.C. §§ 602, 603, 607(a), 795(a), 842, 922, 964(a), 1082(a), 1731, 1752(a), 1962, 2342. In all of these statutes, the “key verb,” I take it, is “shall be” — which cannot possibly show where the offense was committed or where it should be prosecuted. The crux of the offense is expressed with an infinitive (“to do x”) that functions as an adverb that modifies the adjective “unlawful.” Is it proper under the “verb test” to rely on this adverbial phrase? If so, why is it not proper in the case before us to rely on the adverbial phrase “during and in relation to”?
Consider 18 U.S.C. § 922(g), a statute that, like 18 U.S.C. § 924(c)(1), deals with the subject of firearms possession. Section 922(g) provides:
It shall be unlawful for any person—
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
(2) who is a fugitive from justice;
(3) who is an unlawful user of or addicted to any controlled substance ...;
(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
(5) who, being an alien, illegally or unlawfully in the United States;
(6) who has been discharged from the Armed Forces under dishonorable conditions;
(7) who, having been a citizen of the United States, has renounced his citizenship; or
(8) who is subject to [a certain type of court order restraining such person from, among other things, harassing, stalking, or threatening an intimate partner or his or her child]; or
(9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
What are the “key verbs” in this statute? Is the only key verb the verb “shall be” in the main clause? Or do the verbs in the subordinate clauses qualify as well? If so, is venue *865 proper where an accused “has been convicted” (§ 922(g)(1)), “is a fugitive” (§ 922(g)(2)), “is an unlawful” drug user or addict (§ 922(g)(3)), “has been adjudicated as a mental defective” or “has been committed to a mental institution” (§ 922(g)(4)), etc? Or is it permissible to look to the verbal phrases (“to ship or transport,” etc.) as well?
Rather than relying on grammatical arcana, we should, as I have argued above, look at the substance of the statutes in question.
VI.
For these reasons, I would hold that venue in the District of New Jersey was proper, and I would therefore affirm Moreno’s Section 924(c)(1) conviction.

. Although the majority interprets the Constitution's venue provisions as embodying the "verb test," the majority seems to suggest (a) that Congress can bypass the verb test by specifying venue itself and (b) that this congressionally specified venue will pass constitutional muster "as long as the venue bears some relation to the offense." (Maj. Op. at 850)(footnole omitted). But if the majority is correct that the verb test is constitutionally mandated, how can Congress bypass it and specify venue in any place that merely "bears some relation to the offense”?

. For convenience, I refer to Article III, section 2, clause 3 of the Constitution and the relevant provision of the Sixth Amendment as the Constitution's venue provisions. See footnote 6, infra.

. Although I agree with the holding in Pomranz, I do not endorse all of the reasoning in that opinion. Specifically, I do not think that the prosecution’s convenience or inconvenience per se (see 43 F.3d at 161 n. 8) is a relevant factor in ascertaining the scope of the Constitution’s venue provisions.

. The statute goes on to prescribe sentences of 10 or 30 years for cases involving certain types of firearms. Id.

. Federal Rule of Criminal Procedure 18 echoes this command, providing that the "prosecution shall be had in a district in which the offense was committed.”

. Strictly speaking, Article III, section 2, clause 3 concerns venue (where the trial occurs), whereas the Sixth Amendment concerns vicinage (where the jury is drawn). It has been said, however, that "[t]his technical distinction is of no importance.” Charles A. Wright, 2 Federal Practice & Procedure (Criminal), § 301 at 190 (1982 & 1996 Supp.).

. The Declaration of Independence charged the king with "protecting [troops], by a mock trial, from Punishment for any Murders which they should commit on the Inhabitants of these States.”

. N.H. Const, of 1784, art. I, § 17.

. Md. Const, of 1776, Declaration of Rights, art. 18.

. Mass. Const, of 1780, Part first, art. 13.

.At the Federal Constitutional Convention, several proposals were introduced to restrict venue to the state where the offense was "committed.” See Francis Heller, The Sixth Amendment 22-24 (1951). These proposals engendered little debate, none of which seems to have focused on precisely what was meant by the place where an offense was "committed.” Id. Likewise, debate on the Sixth Amendment did not elucidate this question. For a summary of this debate, see Kershen, supra, 29 Okla. L.Rev. at 817-28.