**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VIRGINIA KAY HAYS; SANDRA
MATTHEWS, as mother and next friend
of Garrett Reid Hays, a minor child;
DEANA LORI HAYS, aka Deana Lori
Simonsen, beneficiary; LOU EMMA
DOPPELMAYR, beneficiary,

        Plaintiffs - Appellants,

    v.

No. 96-5089

JACKSON NATIONAL LIFE
INSURANCE COMPANY, a Michigan
corporation,

        Defendant - Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 94-C-860-H)**

---

Harry Scoufos (Thomas W. Condit with him on the briefs), Law Offices of Harry
Scoufos, P.C., Sallisaw, Oklahoma, for Plaintiffs-Appellants.

Richard C. Ford (Anton J. Rupert on the brief), Crowe & Dunlevy, Oklahoma City,
Oklahoma, for Defendant-Appellee.

---

Before ANDERSON, LUCERO, and MURPHY, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiffs are beneficiaries of James T. Hays under a life insurance policy issued by Jackson National Life Insurance Company. In this diversity action, they appeal the district court's order granting Jackson National summary judgment on plaintiffs' contract and tort claims, which generally alleged that Jackson National wrongfully refused to pay death benefits under the policy. Jackson National denied payment because of alleged misrepresentations and omissions on the insurance application regarding Mr. Hays' medical history.

We hold that Oklahoma law requires a finding that the insured intended to deceive the insurer before a misrepresentation or an omission on an insurance application can serve as grounds for nonpayment. Because a genuine issue of material fact exists with respect to Mr. Hays' intent, we reverse the dismissal of the breach of contract claim. We affirm, however, the dismissal of plaintiffs' bad faith, outrage, and reformation claims.

## BACKGROUND

In the fall of 1991, with the help of Jackson National's agent, Mr. Hays completed an application for a Jackson National life insurance policy. Part Two of the application required Mr. Hays' responses to a series of questions regarding his medical history. The

-2-

agent filled out Part Two based on responses provided by Mr. Hays.  Part Two contains

the following pertinent questions and answers:

> 3.      Have you, in the past five years:
>
>    a.      Consulted or been treated by a physician or
>            other medical practitioner?  Yes
>
>    . . . .
>
>    c.      Had an electrocardiogram, X-ray or other
>            diagnostic test?  No
>
>    d.      Been advised to have any diagnostic test,
>            hospitalization, or surgery which was not
>            completed?  No

Appellants' App. Vol. I at 39.  The application instructed Mr. Hays to provide the

following explanatory details with respect to any "yes" response:  the diagnosis and

treatment; the results; the dates and durations; and the names and addresses of all

attending physicians and medical facilities.  Having answered "yes" to question 3.a.,

Mr. Hays provided these details:  "3.a.  1967--Ulcer operation--Dr. Meekly--Sacramento,

CA."  Id.  The only other information disclosed on Part Two relating to Mr. Hays'

medical history is the name, address, and telephone number of his personal physician,

Dr. Martin, along with a notation that Mr. Hays last consulted Dr. Martin for a broken

right foot.

Two days after Mr. Hays and the agent completed Part Two, Jackson National sent

a paramedic to Mr. Hays' home to complete Part Three--the "Medical Examination

-3-

Report." On Part Three, in response to the same questions posed on Part Two, Mr. Hays again mentioned the 1967 ulcer operation, explaining that it was a gastric resection which had required ten to twelve days in the hospital. He also stated that he wore corrective lenses; that in 1990 he sprained his knee skiing; that he had recently broken his right foot; and, finally, that in 1989 he had had a complete physical by Dr. Martin with normal results. Mr. Hays signed both Part Two and Part Three.

Jackson National issued Mr. Hays a $500,000 life insurance policy on November 8, 1991. Approximately five months later, Mr. Hays was diagnosed with cancer of the esophagus. He died from that cause on August 31, 1992.[1]

After plaintiffs made their claim on the policy, Jackson National discovered that Mr. Hays had not provided information on the application relating to the condition of his esophagus. Medical records show that between 1989 and 1991 Mr. Hays had his esophagus examined on at least four occasions by three different doctors. During these examinations, Mr. Hays underwent an esophagram, three EGDs,[2] and multiple biopsies of the esophagus. The examinations revealed an esophageal ulcer, and Mr. Hays was

---

[1]The parties dispute the cause of death. The medical examiner listed cancer of the esophagus as the cause. Appellants' App. Vol. I at 37. Plaintiffs contend, however, that the cancer originated in the stomach and only spread to the esophagus. The precise cause of death is not relevant to our disposition.

[2]An EGD, or esophagogastroduodenscopy, involves using a scope to examine the esophagus, the stomach, and the first intestine.

diagnosed with Barrett's Esophagus.[3]  The biopsies proved negative for cancer, but at

least two different doctors informed Mr. Hays that regular surveillance of his esophagus

would be required.[4]  Based on Mr. Hays' failure to disclose any of this information,

Jackson National refused to pay benefits under the policy and returned all premiums to

plaintiffs.

Plaintiffs filed suit, claiming breach of contract, bad faith, outrage, and

reformation.  Jackson National moved for summary judgment, arguing that Mr. Hays'

failure to disclose the information relating to his esophagus entitled Jackson National to

refuse payment under Okla. Stat. Ann. tit. 36, § 3609.[5]  Jackson National argued that had

---

[3]Barrett's Esophagus, or Syndrome, is a change in the esophageal tissue acquired as the result of long-standing reflux of gastric acid.  Esophageal narrowing and cancer have been associated with the condition.  Stedman's Medical Dictionary 1523 (25th ed. 1990).

[4]In fact, on the very day Jackson National issued the policy, one of the doctors apparently notified Mr. Hays that he was due for another EGD.  It was this next EGD which revealed the cancer.

[5] In pertinent part, section 3609 provides:
A.  All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties.  Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

    1.  Fraudulent; or

    2.  Material either to the acceptance of the risk, or to the hazard assumed by the insured; or,

(continued...)

it known Mr. Hays' true medical history, it would have denied coverage or issued a different policy, citing its underwriting manual which instructs that applicants with Barrett's Esophagus should have their applications rated, or denied, depending on the adequacy of medical follow-up.

In reply, plaintiffs argued there were several genuine issues of material fact precluding summary judgment. Plaintiffs asserted that Mr. Hays' response to question 3.a. (on Part Two) disclosed he had been treated within the last five years in relation to his 1967 ulcer operation. They claimed Mr. Hays' esophageal problems were directly related to that ulcer operation. Therefore, they reasoned, the response to 3.a. was not a misrepresentation, but was in fact sufficient to impose upon Jackson National an affirmative duty to conduct its own investigation before issuing a policy, a duty which estopped Jackson National from relying on inadequacies in the application.

In a connected argument, plaintiffs contended that the agent who filled out the application was a personal friend of Mr. Hays and knew more about Mr. Hays' health than disclosed on the application. They claimed the agent told Mr. Hays that his responses on the application were sufficient because Jackson National would contact Dr.

---

[5](...continued)
> 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

Martin and conduct its own investigation. Finally, plaintiffs argued that in order for Jackson National to rely upon section 3609 as a defense, it had to prove that Mr. Hays made the misrepresentations or omissions with an intent to deceive. They claimed that a genuine issue of material fact existed with respect to Mr. Hays' intent in providing information on the application.

The district court held that Oklahoma law did not require Jackson National to prove an intent to deceive. Appellants' App. Vol. II at 558. The court noted that section 3609 refers to omissions that are fraudulent *or* material, not fraudulent *and* material. Therefore, the court held that Jackson National need only prove Mr. Hays "knew or should have known that he omitted facts from his application which were material to Defendant's acceptance of the risk." Id. at 558-59.

The district court did not explicitly address plaintiffs' arguments relating to the agent's assurances that Jackson National would conduct its own investigation, or to the additional knowledge the agent allegedly possessed regarding Mr. Hays' medical history. Instead, the court turned directly to the significance of the omitted information. The court stated:

> Decedent omitted any mention of his diagnosis of Barrett's esophagus on the application. When asked to list physicians who had treated him within the past five years, he did not include two physicians who examined him for this condition within the past two years. Although he underwent at least two diagnostic tests for the condition and was advised that more would be required, he did not report this in the space on the form which specifically asked him to list diagnostic tests. The court therefore concludes that no

reasonable jury could find that Decedent did not know or should not have known that this information was requested.

Id. at 559. The court further found there was no question the omissions were material since "Defendant's policy notes that Barrett's esophagus is a precancerous condition and Decedent did, in fact, die of cancer of the esophagus only months after obtaining the policy." Id.

Having found Jackson National was entitled to refuse payment, the court dismissed plaintiffs' bad faith and outrage claims. It also dismissed plaintiffs' claim for reformation, noting that "there is no controversy arising out of the language of the policy itself, and therefore reformation is not available." Id. at 561.

## DISCUSSION

**A.     The Contract Claims**

**1.        Breach of Contract**

We find the dispositive issue with respect to plaintiffs' breach of contract claim is whether section 3609 requires Jackson National to prove that Mr. Hays provided his application answers with an intent to deceive. The district court held that it did not. In reviewing this issue, we must apply Oklahoma law, as announced by that state's highest court. Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994). The district court's determination of state law is subject to de novo review. Id.

We begin with the language of the statute. As the district court noted, there is a disjunction between subparagraphs (A)(1) and (A)(2)--the statute refers to misrepresentations and omissions that are fraudulent *or* material. This might suggest that the insured's state of mind is irrelevant, so long as the misrepresented or omitted information is material to the insurer's decision. Subparagraphs (A)(1) and (A)(2), however, merely modify the terms in paragraph (A). Paragraph (A) refers to "[m]isrepresentations, omissions, concealment of facts, and incorrect statements." Okla. Stat. Ann. tit. 36, § 3609(A).

The Oklahoma Supreme Court defined these terms in its first decision interpreting section 3609. In <u>Massachusetts Mutual Life Insurance Co. v. Allen</u>, 416 P.2d 935 (Okla. 1965), the insurer sought to cancel a life insurance policy based on the fact that the insured did not disclose on the application that he had had a lymph node removed for diagnostic tests. The insured defended by arguing that he had not considered the biopsy serious, and that the agent had told him the application was filled out correctly. In affirming a verdict for the insured, the court quoted the following definition of "misrepresentation":

> A misrepresentation in insurance is a statement as a fact of something which is untrue, and which the insured states with the knowledge that it is untrue and *with an intent to deceive*, or which he states positively as true without knowing it to be true, and which has a tendency to mislead, where such fact in either case is material to the risk.

-9-

Id. at 940 (quoting 29 Am. Jur. Insurance § 698) (emphasis added).  The court defined

"concealment of fact" in a similar way:  "Concealment implies an *intentional withholding*

of facts of which the insured has or should have knowledge . . . ."  Id. (quoting 29 Am.

Jur. Insurance at § 692) (emphasis added).

Massachusetts Mutual does not define "omission" or "incorrect statement" in the

body of the opinion.  In the syllabus prepared by the court,[6] however, we find the

following definitions:

> An "omission" in negotiations for a life insurance application under 36 O.S.
> 1961, § 3609, is an *intentional omission* to disclose a fact or condition
> which is material to the acceptance of the risk or the hazard assumed . . . .
>
> . . . .
>
> An "incorrect statement" . . . is a statement of fact which is untrue and
> known to be untrue, or so carelessly made that an *intent to deceive* may be
> inferred.

Id. at 936-37 (emphasis added); see also Whitlatch v. John Hancock Mut. Life Ins. Co.,

441 P.2d 956, 959 (Okla. 1968) (stating that Massachusetts Mutual "defined the terms,

enumerated in the statute, which are made grounds for avoidance of a policy").

The Oklahoma Supreme Court has subsequently followed Massachusetts Mutual's

"intent to deceive" requirement.  In Brunson v. Mid-Western Life Ins. Co., 547 P.2d 970

(Okla. 1976), the court noted its continued approval of the definition of

---

[6]Oklahoma Supreme Court decisions typically are prefaced with a syllabus
prepared by the court.  Both litigants and the court routinely cite to these syllabi in later
cases.

"misrepresentation" found in <u>Massachusetts Mutual</u>--the definition which explicitly refers to the insured's intent to deceive. <u>Id.</u> at 973. In fact, the <u>Brunson</u> court relied on the insured's lack of intent to deceive as one ground for affirming a judgment in his favor: "In instant action, the uncontroverted testimony shows Brunson did not intend to deceive Mid-Western in his application for insurance." <u>Id.</u> The court further stated, "Question of falsity of statements contained in application for life or accident insurance policy and *intent of applicant* in making them is for jury." <u>Id.</u> (emphasis added).

In its most recent discussion of section 3609, the court again has quoted the definition of misrepresentation contained in <u>Massachusetts Mutual</u> and <u>Brunson</u>. <u>Claborn v. Washington Nat'l Ins. Co.</u>, 910 P.2d 1046, 1049-50 (Okla. 1996) (a misrepresentation is a "statement as a fact of something which is untrue, and which the insured states with the knowledge that it is untrue and with an intent to deceive . . . ."). Citing <u>Brunson</u>, the <u>Claborn</u> court also stated: "Where the evidence is conflicting as to either insured's state of health at the time of application, or the falsity of insured's statements in the application process, *or the intent of the insured*, the issues are properly tendered to the jury for resolution." 910 P.2d at 1049 (emphasis added).

When <u>Massachusetts Mutual</u>, <u>Brunson</u>, and <u>Claborn</u> are considered together, we are persuaded that section 3609 requires a finding of intent to deceive before an insurer

can avoid the policy.[7]  Under the definition provided by the Oklahoma Supreme Court, a

_____

[7]In search of additional guidance, we have looked to the Oklahoma Court of
Appeals, but find that court in conflict over the issue.  Compare City Nat'l Bank & Trust
Co. v. Jackson Nat'l Life Ins. Co., 804 P.2d 463, 466 (Okla. Ct. App. 1990) (insurer bears
the burden of showing not only that statements were untrue, but that they were willfully
false, fraudulent and misleading); with Coppin v. Shelter Mut. Ins. Co., 742 P.2d 594,
597 (Okla. Ct. App. 1987) (suggesting that even innocent misrepresentations, so long as
material, are sufficient to prevent recovery on an insurance policy).

We also have looked to other jurisdictions with statutes identical, or nearly
identical, to section 3609.  These jurisdictions also are in conflict over the proper
interpretation.  Compare Massachusetts Mutual Life Ins. Co. v. Thompson, 460 S.E.2d
719, 724 (W. Va. 1995) (stating the majority position that the statute must be read in the
disjunctive, so that intent to deceive is not required if the insurer proceeds under the
second or third subparagraphs); Standard Plan, Inc. v. Tucker, 582 So. 2d 1024, 1031 n.6
(Ala. 1991) (same); Industrial Indem. Co. v. United States Fidelity & Guar. Co., 454 P.2d
956, 959 (Idaho 1969) (same); with American Home Assurance Co. v. Ingeneri, 479 A.2d
897, 901 (Me. 1984) (stating the minority position that the statute must be interpreted so
as always to require proof of fraud, and stating that the statute "manifests a legislative
purpose to protect the insureds").  The differing interpretations of this particular statutory
model may simply reflect the more general disagreement among all jurisdictions
regarding whether intent to deceive is required to cancel an insurance policy.  See 7
George G. Couch et al., Couch on Insurance §§ 35:119-35:122 (2d ed. 1985 & Supp.
1996) (recognizing the split of authority); 12A John A. Appleman & Jean Appleman,
Insurance Law and Practice § 7297 (1981 & Supp. 1995) (same).  And, while the trend
may be to dispense with an intent to deceive element, see, e.g., Wade v. Olinger Life Ins.
Co., 560 P.2d 446, 451 (Colo. 1977) (stating that the "majority rule" does not require
intent), some minority states have recently affirmed their adherence to the intent to
deceive element.  See Perault v. Time Ins. Co., 633 So. 2d 263, 265-66 (La. Ct. App.
1993); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 282 (Tex. 1994).  Given the
history of this split, we find no reason to question the apparent meaning of the Oklahoma
decisions.

Finally, we have considered the federal authorities relied upon by the district court
in holding that intent to deceive was not required.  We do not believe that Burgess v.
Farmers New World Life Ins. Co., 12 F.3d 992 (10th Cir. 1993), directly addressed the
issue.  In any event, Claborn was decided after Burgess and provides guidance this court
(continued...)

-12-

statement made without intent to deceive is not a misrepresentation at all, and thus does

not invoke section 3609. And while the above cited decisions almost always focused

upon "misrepresentations," we believe, in light of the continued approval of

Massachusetts Mutual, that the court simply has not distinguished between the other

terms of the statute.[8] In other words, omissions, concealments of fact, and incorrect

statements also require intent to deceive.

Jackson National challenges such a conclusion by arguing that the court in Claborn

found for the insurer without ever actually discussing whether the insured intended to

deceive the insurer. We disagree. The court stated that the evidence presented at trial

showed "that the misrepresentations made by Claborn were indeed a known falsity . . . ."

Claborn, 910 P.2d at 1049. Considering the court had just previously defined

misrepresentation as a statement made with intent to deceive, we take this to mean that

the court found the only reasonable inference available from the facts was that the

---

[7](...continued)
must follow. And, to the extent Dennis v. William Penn Life Assur. Co. of America, 714
F. Supp. 1580 (W.D. Okla. 1989), expresses a contrary interpretation of section 3609, it is
disapproved.

[8]We have not found any Oklahoma Supreme Court decision, other than
Massachusetts Mutual, that explicitly defines omission, concealment of fact, or incorrect
statement, as used in section 3609. Instead, it appears that both litigants and the court
have used "misrepresentation" as shorthand for the terms, which is not unique. See
Powell v. Time Ins. Co., 382 S.E.2d 342, 348 n.6 (W. Va. 1989) ("For convenience, we
have used the term 'misrepresentations' to refer to the 'omissions, concealments of facts,
and incorrect statements' specified in the statute, as these terms tend toward the same
meaning.").

insured's misstatements were deceitful. Indeed, the court distinguished <u>Brunson</u> on the grounds that the insured in that case had provided a plausible, innocent explanation for his false answers, while the insured in <u>Claborn</u> had not.[9]

Having concluded that intent to deceive is required, we must reverse the dismissal of the breach of contract claim. Because this case comes to us on summary judgment, plaintiffs' evidence must be believed, and all justifiable inferences are to be drawn in their favor. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Still, the issue is close. We agree with the district court that Mr. Hays' application answers did not reveal a significant amount of material, requested information. Considering that Mr. Hays provided such comparatively unimportant information on Part

---

[9]Jackson National also argues that <u>Vaughn v. American Nat'l Ins. Co.</u>, 543 P.2d 1404 (Okla. 1975), stands for the proposition that intent to deceive is not required. <u>Vaughn</u> also took its definition of misrepresentation from <u>Massachusetts Mutual</u>, but <u>Vaughn</u> quoted the definition from the syllabus of that opinion, rather than from the body: "A 'misrepresentation' in negotiations for a life insurance policy under 36 O.S.1961, § 3609, is a statement as a fact of something which is untrue, and which the insured knows or should know is untrue, * * *, and which has a tendency to mislead, where such misrepresentation is material to the risk." <u>Id.</u> at 1406-07 (omissions in the original). In holding that the insurer was entitled to rescind the policy, <u>Vaughn</u> makes no mention of the insured's intent.

Whatever <u>Vaughn</u>'s meaning, it is not enough to convince us that the insured's intent is irrelevant. <u>Brunson</u> and <u>Claborn</u> both were decided after <u>Vaughn</u>. Both cite from the body of <u>Massachusetts Mutual</u>, rather than from the definition of misrepresentation contained in the syllabus. Furthermore, considering the other definitions contained in the syllabus of <u>Massachusetts Mutual</u> (all of which refer to the insured's intent), we are reluctant to attach any great significance to the fact that <u>Massachusetts Mutual</u>'s syllabus definition of misrepresentation differs from the definition provided in the body of that opinion.

-14-

III regarding a skiing injury, corrective lenses, and a broken foot, we find it particularly suspicious that he somehow felt it unnecessary to reveal his esophageal examinations. Intent to deceive is a reasonable inference from the facts.

On the present record, however, we cannot say that intent to deceive is the only reasonable inference. Jackson National's agent filled out the application, and he believed the response to question 3.a. revealed that Mr. Hays had been treated within the past five years for problems relating to his ulcer operation. The agent thought Jackson National would contact him or Dr. Martin for further medical information, and he told Mr. Hays that Jackson National would conduct its own investigation. The agent also states that, at the time he filled out the application, he knew Mr. Hays had "stomach problems," and that Mr. Hays had been "checked out, and that the tests proved negative for cancer and ulcers." Appellants' App. Vol. I at 95 (Folks Aff.). Furthermore, Virginia Hays, the wife of Mr. Hays, states that she was present with Mr. Hays after each of the EGDs. She claims she does not recall "any doctor telling my husband that he was at greater risk for cancer than anyone else." Id. at 100 (Hays Aff.). Accepting this evidence as true, and drawing all permissible inferences in plaintiffs' favor, we find the factfinder might conclude that Mr. Hays not only was unaware of the true nature of his condition, but that he honestly considered further detail on the application unnecessary since the agent told

-15-

him Jackson National was going to review his medical records anyway. Therefore, we reverse the dismissal of the breach of contract claim.[10]

### 2. Reformation

Plaintiffs argue the district court erred in dismissing their reformation claim. They argue that even if Mr. Hays' application answers were deficient, the court should award plaintiffs "what they would have received for decedent's premium dollar," Appellants' Br. at 37, presumably on the theory that even if Jackson National had known Mr. Hays' true medical history, it would simply have issued a more expensive policy.

Plaintiffs cite no authority in support of this theory, and we reject it as repugnant to the purposes of section 3609. "If the only consequence of a fraudulent misrepresentation in a life insurance application is to reduce the amount paid under the policy, there is every incentive for applicants to lie." New York Life Ins. Co. v. Johnson, 923 F.2d 279, 284 (3d Cir. 1991); see also Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp., 848 F.2d 30, 34 (2d Cir. 1988). We are confident the Oklahoma Supreme Court would not provide such an incentive. Under section 3609, the application answers either amount to material misrepresentations or they do not; we find no middle ground. We affirm the dismissal of the reformation claim.

---

[10]Because we reverse based on the district court's legal error in interpreting section 3609, it is not necessary to consider the plaintiffs' additional arguments relating to actual notice, imputed knowledge, or estoppel.

**B.      The Tort Claims**

**1.      Bad Faith**

Plaintiffs' bad faith claim is based upon Jackson National's conduct in selling and issuing the policy. They contend that it was "unreasonable, irresponsible, and reprehensible" for Jackson National to write the policy without first conducting an underwriting investigation, particularly in light of their allegation that Mr. Hays allowed other incontestible policies to lapse in reliance upon the Jackson National policy. Appellants' Br. at 29.

Although we have held that the breach of contract claim must be remanded, we affirm the dismissal of the bad faith claim. The tort of bad faith breach of an insurance contract must be based upon an insurer's wrongful denial of a claim; it cannot be based upon the conduct of the insurer in selling and issuing the policy. Claborn, 910 P.2d at 1051. Therefore, whether Jackson National conducted a pre-policy investigation is not relevant to whether Jackson National acted tortiously in disputing plaintiffs' claim.

Apart from their argument that Jackson National should have investigated before issuing a policy, plaintiffs do not explain how it was unreasonable for Jackson National to refuse payment and litigate their claim in light of the medical records it obtained after Mr. Hays' death. See Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994) (an insurer has the right to resist payment and litigate any claim to which it has a reasonable defense). Plaintiffs' various theories concerning the agent's conduct, while relevant to

their breach of contract claim, cannot support their bad faith claim. Under Oklahoma law, the alleged knowledge and acts of the agent at the time of the application is not imputed to the principal for purposes of determining whether the principal acted in bad faith. Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1440 (10th Cir. 1993). Therefore, summary judgment was appropriate. See id. at 1437.

### 2. Outrage

Plaintiffs' outrage claim is based on the same theory as their bad faith claim; namely, that it was outrageous for Jackson National to issue a policy without investigation, only to conduct a post-claim investigation and deny payment. Yet, we do not find any requirement in Oklahoma law that insurers conduct investigations prior to issuing policies. See Marshall v. Univ. Life Ins. Co., 831 P.2d 651, 653 (Okla. Ct. App. 1991) ("Contrary to Appellee's assertions, Universal was under no duty at that time to discover whether or not [the application answer] was a misrepresentation. It did, however, have the contractual and statutory right to investigate the claim when it was made."). And, there is certainly no suggestion that choosing not to conduct such an investigation is beyond all possible bounds of decency. The district court properly dismissed this claim. See Kraszewski v. Baptist Med. Center of Oklahoma, 916 P.2d 241, 248 (Okla. 1996) (before the tort of outrage may be submitted to the jury, the court must

independently determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery).[11]

**C.    Discovery**

Finally, plaintiffs appeal from two discovery orders, one by the district court dated June 14, 1995, and one by the magistrate judge dated December 15, 1995. The orders both deny certain requests aimed at uncovering other instances in which Jackson National issued policies without investigation and later denied payment. Having reviewed the record, we conclude that the district court did not abuse its discretion in issuing the June 14th order. See Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995), cert. denied, 116 S. Ct. 1678 (1996) (discovery orders generally will not be disturbed absent an abuse of discretion). Because the district court did not rule on the magistrate judge's December 15th order prior to summary judgment, we leave the matter to the district court's discretion on remand.

---

[11]Plaintiffs appear to argue that even if their tort claims are dismissed, their prayer for punitive damages can still go the jury as an independent claim, or as an element of their remaining contract claim. These arguments lack any basis in law.

## CONCLUSION

The dismissal of the reformation, bad faith, and outrage claims is AFFIRMED. The district court discovery order dated June 15, 1995, is also affirmed, insofar as it relates to the denial of plaintiffs' discovery requests. The dismissal of the breach of contract claim is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.