**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

ALEJANDRO GONZALEZ,
        *Defendant-Appellant.*

No. 11-10380

D.C. No.
3:10-cr-00834-
WHA-1

OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted
June 13, 2012—San Francisco, California

Filed June 27, 2012

Before: Ronald M. Gould, Richard C. Tallman, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Erick Guzman, Esq., Santa Rosa, California, for the defendant-appellant.

Aaron Wegner, Assistant United States Attorney, United States Attorney's Office, San Francisco, California, for the plaintiff-appellee.

## OPINION

TALLMAN, Circuit Judge:

The United States Constitution and federal law require that crimes be prosecuted where the offense was committed. This venue requirement, however, is more easily stated than applied. Determining where an offense occurred can be quite tricky—particularly for continuing crimes, like conspiracy, where the conspirators' activities often have a ripple-like effect that may involve numerous districts.

Here, the district court correctly determined that venue for a drug-sale conspiracy was proper in the Northern District of California based on two telephone calls initiated by a government informant, who was in the district, to defendant-appellant Alejandro Gonzalez ("Gonzalez"), who was located outside of the district. By using those calls to negotiate the terms of a drug deal to be completed in the Eastern District of California, Gonzalez propelled the conspiracy into the Northern District of California. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

I

The parties stipulated to the following facts at a bench trial before the district judge: At the direction of Drug Enforcement Administration ("DEA") agents, a confidential informant ("CI") placed at least two telephone calls to Gonzalez's cell phone number. The CI was in the Northern District of California during the calls, but Gonzalez was not. Nothing in the stipulated facts indicates whether Gonzalez knew or had reason to know that the CI was calling from the Northern District of California.[1]

---

[1]At a pretrial hearing, the government proffered that it had evidence demonstrating that Gonzalez knew or should have known that the CI was in the Northern District of California based on prior drug deals between

During the recorded telephone conversations, Gonzalez negotiated the sale and delivery of five kilograms of cocaine to the CI in exchange for $85,000. Gonzalez also said that he would bring another individual (known as "the guy") with him to deliver the drugs. Gonzalez and "the guy" met the CI and an undercover DEA agent in a Chili's parking lot in Modesto, California, in the Eastern District of California. Gonzalez delivered the cocaine to the DEA agent and was arrested shortly thereafter.

Gonzalez was indicted in the Northern District of California on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and two counts of use of a telephone to commit a felony drug offense, in violation of 21 U.S.C. § 843(b). Gonzalez moved to dismiss the indictment based on improper venue. The district court denied the motion. At the stipulated-facts bench trial, Gonzalez again moved for acquittal under Federal Rule of Criminal Procedure 29 based on improper venue. The district court again denied the motion, found Gonzalez guilty on all three counts, and sentenced him to seventy-eight months imprisonment. On appeal, he claims that the district court erred in holding that venue on the drug-conspiracy offense was proper in the Northern District of California.[2]

II

We review the district court's determination on venue de novo. *See United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1059 (9th Cir. 2000).[3] The government bears the burden of

---

the CI and Gonzalez. None of those underlying facts, however, were included in the factual stipulation at the bench trial. Because foreseeability is not required to establish venue, *see infra*, we do not address whether it would be proper for us to consider evidence outside of the stipulation.

[2]Gonzalez does not challenge his conviction on two counts of use of a telephone to commit a felony drug offense.

[3]Because the parties stipulated to the facts this appeal presents a purely legal question. *See United States v. Ziskin*, 360 F.3d 934, 942-43 (9th Cir. 2003).

establishing proper venue by a preponderance of the evidence. *See United States v. Chi Tong Kuok*, 671 F.3d 931, 937 (9th Cir. 2012) (citation omitted).

### III

**[1]** The government must prosecute an offense in a district where the crime was committed. *See* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ."); *id.* amend. VI ("[T]he accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."); *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). Congress has provided that venue for a continuous crime, such as conspiracy, lies in any district where the "offense was begun, continued, or completed." 18 U.S.C. § 3237(a). It is by now well settled that venue on a conspiracy charge is proper where the conspiracy was formed or where any overt act committed in furtherance of the conspiracy occurred. *See United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994) ("Although [the defendant] never set foot there, Nevada was a proper venue for the conspiracy charge (count one) because it was the site of the initial agreement and subsequent phone calls [by the defendant's coconspirators] planning the drug transaction.").

**[2]** The CI's presence in the Northern District of California during the telephone calls with Gonzalez sufficed to establish venue there on the conspiracy charge. It is undisputed that Gonzalez used the calls with the CI to arrange a drug sale, including negotiating the amount of cocaine, the price, and the place of delivery, thereby taking an overt act in furtherance of the drug-selling scheme. *See id.*

**[3]** It makes no difference that the CI sought to frustrate the conspiracy. A conspirator acting alone, with an unwitting

third party or with a government agent, may take acts in furtherance of the conspiracy sufficient to support venue. *See, e.g.*, *United States v. Angotti*, 105 F.3d 539, 545-46 (9th Cir. 1997) (holding that venue for a conspiracy charge had been established based on the preparation and transmission of a falsified document by a coconspirator in the district to an out-of-district bank). Although "there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy," *see United States v. Escobar de Bright*, 742 F.2d 1196, 1198 (9th Cir. 1984) (internal quotation marks and citation omitted), Gonzalez does not dispute that the government established beyond a reasonable doubt that he conspired to effect the drug sale with another (i.e., "the guy"). To determine whether venue is proper we ask not whether all of the elements of a conspiracy were committed in the district of venue, but rather, whether a conspirator committed an act in furtherance of the conspiracy in that district. *See Corona*, 34 F.3d at 879.[4]

**[4]** Nor does it make any difference that Gonzalez never set foot in the Northern District of California and did not initiate the calls himself. It was sufficient that, in furtherance of the conspiracy, Gonzalez conducted communications with someone located in the Northern District of California. We have never required a defendant's physical presence in the district of venue in a conspiracy case. *See Corona*, 34 F.3d at

---

[4]To establish a conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, as distinguished from the general conspiracy statute found in 18 U.S.C. § 371, the government need not prove the commission of an overt act in furtherance of the conspiracy. *See United States v. Jackson*, 167 F.3d 1280, 1285 (9th Cir. 1999) (citing *United States v. Shabani*, 513 U.S. 10, 14-16 (1994)). Nevertheless, we have held that a section 846 offense occurs for purposes of venue where a conspirator commits an overt act in furtherance of the scheme. *See Corona*, 34 F.3d at 879; *see also Angotti*, 105 F.3d at 543 ("[E]ven though a crime may have been completed earlier, it does not follow that the crime then terminated, and that what transpired . . . was irrelevant for venue purposes." (internal quotation marks and citation omitted)).

879 ("It is not necessary that the defendant himself have entered or otherwise committed an overt act within the district, as long as one of his coconspirators did." (internal quotation marks, citation, and alteration omitted)). Moreover, because conspiracy is a continuing offense, the crime occurs both where a communication is made and where it is received. *See Andrews v. United States*, 817 F.2d 1277, 1279 (7th Cir. 1987) (holding that prosecution for using the telephone to facilitate unlawful distribution of cocaine was proper based on a telephone call initiated by a government informant in the district to a defendant outside the district); *see also United States v. Johnson*, 323 U.S. 273, 275 (1944) ("[A]n illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district.").

**[5]** We agree with the Second Circuit that "[w]hen a conspirator uses a telephone call—by whomever initiated—to further a criminal scheme, the conspirator effectively propels not only his voice but the scheme itself beyond his own physical location into that of the person with whom he is speaking." *United States v. Rommy*, 506 F.3d 108, 122 (2d Cir. 2007) (citations omitted) ("[A] telephone call placed by a government actor within a district to a conspirator outside the district can establish venue within the district provided the conspirator uses the call to further the conspiracy."); *see also United States v. Cordero*, 668 F.2d 32, 43-44 (1st Cir. 1981) (holding that venue on a conspiracy charge was proper based on telephone calls from an undercover agent in the district of venue to conspirators outside that district).

**[6]** Finally, it does not matter whether Gonzalez knew or should have known that the CI was located in the Northern District of California during the calls. Simply put, section 3237(a) does not require foreseeability to establish venue for a continuous offense. *See* 18 U.S.C. § 3237(a) ("Except as otherwise expressly provided by enactment of Congress, any

offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."); *see also Angotti*, 105 F.3d at 545 (holding that venue on a conspiracy charge was established by a coconspirator's overt act in the district where trial was held, even though the defendant claimed he could not have foreseen where the overt act would occur).[5] "[V]enue is similar in nature to a jurisdictional element, and typically lacks any sort of explicit knowledge or foreseeability prerequisite." *United States v. Johnson*, 510 F.3d 521, 527 (4th Cir. 2007) (citations omitted) (concluding that foreseeability is not required under 15 U.S.C. § 78aa, the venue statute applicable to securities offenses).

We acknowledge that "venue will often be possible in districts with which the defendant had no personal connection, and which may occasionally be distant from where the defendant originated the actions constituting the offense." *Angotti*, 105 F.3d at 543. Yet, while the venue requirement protects the accused from "the unfairness and hardship" of prosecution "in a remote place," *United States v. Cores*, 356 U.S. 405, 407 (1958), "the constitutional text makes plain [that] unfairness is generally not a concern when a defendant is tried in a district 'wherein the crime shall have been committed,' " *Rommy*, 506 F.3d at 119 (quoting U.S. Const. amend. VI.).[6]

---

[5]*But see United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue."); 2 Wright, Federal Practice and Procedure § 307 ("There is a split in the circuits regarding whether the government must prove the defendant intended the act that furnishes venue in the district, or at least show that the act was foreseeable." (citing *Angotti* and *Svoboda*)).

[6]To the extent Gonzalez argues that the government improperly "manufactured" venue by placing the CI in the Northern District of California, we have not yet decided whether manufactured venue is a defense, *Chi*

Where an otherwise proper venue would be inconvenient or burdensome, a defendant may always move to transfer to another venue. *See* Fed. R. Crim. P. 21(b) ("Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."). Gonzalez made no transfer motion in this case.

## IV

**[7]** Gonzalez effectively propelled the drug-selling conspiracy into the Northern District of California by negotiating the terms of a substantial drug transaction on a telephone call with a CI who was located in that district. Venue on the conspiracy charge was therefore proper in the Northern District of California.

**AFFIRMED.**

---

*Tong Kuok*, 671 F.3d at 937-38. Regardless, Gonzalez has not put forward any evidence suggesting that the government engaged in "extreme" law enforcement tactics to manufacture venue. *See id.* at 938 (noting that to the extent the principles of manufactured jurisdiction can be extended to venue, it would be "limited to cases involving 'extreme' law enforcement tactics"). Indeed, there was nothing extreme about the CI calling Gonzalez from the San Francisco Bay Area to see whether Gonzalez was willing to engage in a drug sale, which the two ultimately agreed to consummate in Modesto.